Judge Trimble,
delivered the following opinion of the court ¡ — Edwards purchased of Charles Stewart, his claim to a lot of land in Russellville ; and upon the complaint of Edwards, an inquisition of a forcible de-tainer, was taken, and found against Handley. Before Edwards was put into possession of the lot, according to the inquisition found in his favor, a compromise was made between Handley and himself, by which Handley agreed to give Edwards seven hundred and fifty dollars worth of land ; for which, a bond was executed to Edwards ; who, in consideration thereof, released his claim to the lot, to Handley.
Some days afterwards, this bond was exchanged between the parties, for one conditioned that Handley should convey to Edwards, by deed, with general warranty, seven hundred and fifty acres of land, out of two tracts, one on the east fork of Panther creek, patented to Edward Carrington ; the other on Rough creek, in the name of John May: u The land to be conveyed as soon as said Edwards makes his choice, or within three months, at most, from this date. 10th March, 1800.”
On this bond, is this indorsement — “ June 10th 1800, It is agreed to extend the within contract three months from this date ; and if the said Handley should be ready to shew the land sooner, the said Edwards to make *603 his choice whenever; the said Handley gives him reasonable notice of his being ready to shew the same;” which is signed by the parties, and attested.
h a hav“ a §roun^ for a new trial, and.® tsl™PP°r-negieíl todo to, "riT'dT ^ * rquíty”
Equity will «mpel a aconveyánceo* Urn in lieu of damage, (tho1 it the compiai-“nc «nnut^ jj'*' a cUar tl_
Upon this, obligation, Edwards brought suit in cover , w , 1 ' . 1 D T ,. .. nant, and recovered, a judgment, m the Hogan district court, for seven hundred and fifty dollars damages.,
To this judgment, Handley obtained an injunction, upon a bill'brought to set aside the contract; obtain a new trial; or for such relief as he should be entitled to inequity. An amended bill, prays, that if a perpetual ipjunction “ should not be deemed equitable, that then a conveyance of the land be decreed, provided a title shall be produced on the trial.”-
The points stated in the bill, as entitling the party to relief, are as follow :
1st. That the complainant received no. consideration,nút for the said bond; that it was given for a house and lot, which the complainant believes was, in law and equity, his own property, as the first improver, under terms held out by the heirs of William Russell, deceased, who were the proprietors of the suryey on which Russellville is established, promising a gratuity of a certain parcel or, Iot of land, to settlers and improvers within the limits of the town.
2nd. “That the bond was extorted from him by the defendant, together with the assistance of a packed jury, and a certain Charles Stewart, who is also made a defendant.” > “ That for fear of being dispossessed,” and of the consequent loss and sacrifice of valuable property, which he had in the house, he acceded to the compromise ; although he believed the inquisition erroneous ; and that he could be reinstated at some time, although that time was uncertain; and because he could “ spare the 750 acres of land, without feeling a. very sensible injury.”
3rd. That in the indorsement of the bond, the words succeeding ‘‘choice,” were fraudulently added, without, his knowledge or consent, after his signature was affixed.
4th. “ That on the trial of the action at law, Edwards introduced witnesses, to prove the value of lands, not comprehended in either of the aforesaid tracts ; and who, also, induced the jury to believe, that it was the same lands that the aforesaid bonds called for ; when, in fact, it was altogether different lands, and of a superior ” That the complainant “ had been at the ex- *604 pence of hiring men to explore the land, and of re-surveying them, whose veracity could not be disputed ; and also* had them summoned, who failed to attend.”
The answer denies the charges in the bill, in general terms, and in detail. Sundry depositions and exhibits, are filed by the parties.
Upon the hearing, the circuit court of Green, decreed a perpetual injunction against the judgment at law ; and “ that the complainant do, on or before the first day of September next, convey to the defendant, Ninian, seven hundred and fifty acres, agreeably to the bond, passed 10th March 1800: and it is farther decreed and ordered, that the defendant, Edwards, recover of the complainant all legal costs incurred in this suit,”
From this decree, each party prayed an appeal. Handley failed to lodge the record in this court, as prescribed by statute, and his appeal was therefore dismissed.* ' Edwards has prosecuted this, his appeal.
Upon the first point, it is well established that Stewart, from whom Edwards pdrchased, made an improvement on the lot in dispute, in 1794, before Handley settled in the town ; that Stewart afterwards made other improvements, which Handly contends were for his use and benefit, and that he paid Stewart for them, and caused others to be made to the value of 1500 dollars ; but Stewart contended that the lot was his : a dispute arose about the price which Handley should give Stewart, which the parties could not accommodate. Stewart claimed possession of the premises ; and Handley said" that Stewart might remove his house off the lot, but that the lot was hie (Handley’s). Stewart gave Handley notice, that he should pay ten pounds per day, for withholding possession of the lot and appurtenances. Under these circumstances, Stewart laid his claim to the lot, before the trustees of the town ; the question was postponed, to give Handley an opportunity to contest the claim ; but the trustees being satisfied by the testimony, *605 ⅜⅜ to the claim of Stewart, adjudged the lot to hi® ; and he accordingly paid the consideration therefor. Hand-ley elates froth the proprietors, a$ ah improver, under their promise as aforesaid ; made to encourage settlements and improvements. This promise, if ever made, was only made by One or two of the eo-heirS of RtíSSeli, of whom some Were infants; and, théreróre, Ais promise could give but a very partial and defective claim, in equity. Whether Stewards claim under the trustees, is regular, does not certainly appear. If it were necessary to decide between Handley’s and Stewart’s pretensions, we are inclined to believe, that Stewart’s claim tbr the lot was the superior. To; say the best of Handley’» case, upon this point, he shews but a doubtful equity.
As to the second point, the bill is wholly unsupported. That the jury was “ packed,” or that there Was anf unfair practice upon them, or that any unfair means were* used by Edwards, to procure unfit persons to be put oft the inquest of forcible detainer^ does not appear in evidence ; but it appears that the persons composing the inquest, were respectable.
But the idea held put on this subject, ⅛, Aat Handley' was dragged into the compromise, for fear of loss of his property in the house, and loss of possession for a time j not from any misapprehension of his right ; nor, from being overre ached in the bargain, by a suppression of the truth, or a suggestion of falsehood. Whether the inquisition, therefore, was: erroneous, or net, is immaterial, as it respects the bond given by Handley. Menace Of corporeal pain, shall avoid a deed ; but menace of his goods, shall not — -Nov’s Maxims, p. 19. Menaces which induce a fear of loss of /i/e, of iñéinher, of mayhem, or of imfirisonthent, may avoid a deed ; but mena-¿ cing to commit a battery, to burn his houses, of spoil his goods, is not sufficient to avoid a man’s- deed; for, if these threats should be executed, he may sue and recover damages proportioned to the injury sustained — -2 In-stitüe483 — Bac. Ab. title duress, Gwil. Ed. p. 156.
These rules may be so far relaxed, in chancery, as that a contract obtained under unfair advantages, and circumstances of hardship and grievance, not amounting to legal duress, will will not be specifically enforced;; but left to the law.
Yet the complainant does not shew himself entitled, *606 in equity, to a relaxation of the rules of law respecting duress. He does not state that he feared illegal violence to his person or property. But his apprehension was, that he would not always be present, to defend himself, by his own club-law, against the officers of justice, clothed with the authority of the laws of the country.
When we add to this, his ratification of the contract, by changing the bond, on the “ 10th of March,” and again by the indorsement of the “10th of June,” there is not any pretext left for setting aside the compromise. Then he was laboring under no apprehensions, on. menaces of violence ; but, on the contrary, it was at a time when Edwards stated (as the complainant sets forth in his bill) that “ he considered his interest in. the bond as forfeited,” by his own neglect, in not making chpice within the time before alluded to ; and that unless the complainant “ would be so good as to extend the. contract, he considered his case remediless.”
But the bill goes farther, in acknowledging the rati-, fication of the contract to have been voluntary and unbi-. assed ; for, after making the statements last mentioned, the bill progresses, and contains these expressions — Neither had your orator any objections to extending the, contract to any reasonable length, he (the defendant), pleased.”
Whatever claim, Handley might, by possibility, have, been entitled to, under the original contract, or upon the case between Stewart and himself, yet he has no claim to relief against a confirmation thus doubly made, and fairly obtained, without any pretence of fear or duress — ; Earl of Chesterfield vs. Jansen, 1 Atk. Mr. Justice Burnett’s opinion, p. 344, and the authorities, cited ; al-. so, Lord Chancellor’s opinion, p. 349.
On the third point, there is not the shadow of proof% to support the bill; but, so far as the negative can be proved, it is done : the evidence is, that the indorsement-is regular, in the same ink throughout, and the signatures at the usual and proper distance from the writing,
The fourth point, the complainant attempted to support, by proving that Henry Rhodes was examined as \ witness in the action at law, to prove the value of the land ; that he stated the land to be worth from nine to twelve shillings per acre ; and several witnesses swear, they do recollect that Rhodes corrected his statement, or *607 made a second statement. But by the depositions of Armstead Morehead, George Robinson, David Davidson, Henry Grider, and Amos Balch, it appears that Rhodes did at first state the value of the land on Panther creek at nine or twelve shillings per acre ; but upoh hearing the bond read a second time, he corrected his statement, and stated it to be worth three shillings, or four shillings and six pence per acre. That another, or other witnesses, were examined on the subject of the valuation of the land in the bond ; and that the jury, in their retirement, took something like a medium.
As the fact, therefore, is against the complainant, it might be sufficient to stop here. But it is necessary tb negative any implication which might thence arise, that the testimony of a witness, examined in open court, before a jury, where the parties were represented by counsel, could ever afterwards be re-canvassed in a court of chancery, for the purpose of finding out whether the witness was, or was not mistaken as to the valuation, or other matter of his evidence.
It was the indispensable duty of Handley, by himself or counsel, to have attended to the examination of the witness; to have required the instruction of the court to the witness or the jury, if necessary, and to have explained it by other evidence ; or if he was unprepared for trial, to have asked a continuance. If surprised by unexpected, and material evidence, which he could otherwise have explained, to have made out a proper case, and obtained, or applied for a new trial.
But of these things, none were done. Handley went to trial without objection. He was represented by counsel, who appears by no means to have been remiss. There is no evidence of any surprise or inability on the side of the complainant, which could have prevented him from makng his defence ; nor does it appear that he did not make all the defence his case was capable of. There is, therefore, no cause for a new trial at law, any more than for setting aside the compromise entered into when the complainant, as the whole complexion of his bill shews, was well apprised of every matter upon which he now wishes to impeach it.
The complainant has no claim to have a decree that Edwards should take the land. Waiving the question, whether the plaintiff at law shall, in any case, be compel *608 'led, after ⅜ judgment at law for breach of .covenant, to .accept the land in lied of the damages, Handley did not .shew that he had title, ,even on the trial of the cause.
Clay, Talbtit, and Littell^ for the appellant; Alien, for the appellee; v
He produced a deed made by cogimissioners appointed by the coünty court (subsequent to the .exhibition .of his bill) to him, as locator of the tract of Edward Car-rington. But whether the appointment was regular, or the statute pursued, does not appeár ; nor does it appear that Carrington had title.
The bond, in the condition, contains a recital that one of the tracts out of which Edwards was to have choice, . was patented to Edward Carrington ; but this is but the recital of Handley, by which Edwards is not concluded,
, To the o ther tract, Handley shewed no colour of title. Before equity can compel a party to accept the land, in place of damages assessed therefor at law, it must be indispensably necessary, (other things not opposing) that the complainant asking such relief, shduld shew a clear title, derived regularly, to the láadsp to be given in lied of the damages.
A doubtful equity ought not to prevail against a judgment at law. But Handley has not made out so much as a doubtful equity. He does n,o,t shew that he was able to comply with the covenant, if Edwards had chosen the Panther creek lands ; much less to give Edwards his choice of that tract, or the tract on Rough creek. The decree being thus radically erroneous, it is unnecessary to speak of the vagueness and uncertainty, as to the land to be conveyed thereby j and whether it was tobe on Panther or on Rough creek ; whether Edwards was to have his election, or Handley to fay it off at his pleasure.
Upon the bill, answer, and exhibits, it seems clear, that Handley has no claim to relief in a court of equity. It is, therefore, decreed and ordered, that the said de-tree of the circuit court, be reversed, set aside, and annulled ; the cause is remanded to said,circuit court, with directions to dissolve the complainant’s injunction, with tenpercent, damages on the amount of the judgment at law ; and to dismiss the bill with costs. Which is ordered to be certified, &c.
And it is farther decreed and ordered, that the appel-lee pay to the appellant, his costs in this behalf expended.

 HANDLEY w. EDWARDS.
It was contended, that Edwards having filed a tran fcript of the record, under the appeal which he had taken, the whole caufe was thereby removed j and that it was, therefore, unnecefTary for Handley to file another tranfeript. 1
Hut the court decided, that each’ appeal rauft bé confidered a leparate fu\t in this court j and, thereiore, each appellant muíl file a tranfeript, unlefs it were diipenled with by exprefs confent; otherwife, the appeal muft be diimifled*, purfciantto the adfc ofaffembly — A¿ts ot iSoo, cb. 24, § 3> p* ⅝